**[J-81-2016] [MO:Dougherty, J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 718 CAP |
| | : | |
| Appellee | : | Appeal from the Judgment of Sentence |
| | : | entered on 1/6/2015 in the Court of |
| | : | Common Pleas, Monroe County, |
| v. | : | Criminal Division at No. CP-45-CR- |
| | : | 0000391-2008 |
| | : | |
| CHARLES RAY HICKS, | : | ARGUED: September 13, 2016 |
| | : | |
| Appellant | : | |

**DISSENTING OPINION**

**JUSTICE WECHT**                                     DECIDED: March 28, 2017

Rule 404 of the Pennsylvania Rules of Evidence generally bars the use of prior bad acts evidence to prove that a person acted in accordance with his previous conduct. See Pa.R.E. 404. The party seeking admission of the evidence cannot use those acts or behaviors to convey to the jury that the opposing party must have done "X" because he has done "X" before, or many times before. Justice Donohue cogently describes the prejudicial impact of admitting such evidence, and the manner in which it diminishes the Commonwealth's obligation to satisfy its constitutional burden of proof beyond a reasonable doubt. See Diss. Op. at 1-2 (citing Shaffner v. Commonwealth, 72 Pa. 60, 65 (1872)).

Rule 404 is challenging, and the consequences of its erroneous application are significant. Basic human nature and rational thought tend to default toward the very logic that the rule prohibits. It is natural and well-nigh inevitable that a juror considers a person to be a drug dealer when told that the same person has dealt drugs multiple

times in the past, or that a juror will conclude that, if a person has assaulted women before, he likely will do so again. Although we presume that jurors follow a trial judge's instructions, see Commonwealth v. Chmiel, 30 A.3d 1111, 1184 (Pa. 2011), it is difficult to set aside opinions that arise naturally and to confine evidence of an inflammatory nature to a purpose whose limitations conflict with intuitive thought processes. I have no doubt that jurors across this Commonwealth are capable of rising to this challenge, and that they do so on a daily basis in our courtrooms. This does not, however, obviate the fact that putting aside such innate reactions is a daunting task for any person.

Moreover, Rule 404's exceptions are both numerous and broad. See Pa.R.E. 404(b)(2). This creates the obvious danger that the exceptions will devour the rule. If courts do not adhere scrupulously to the terms and purposes of the rule, this danger becomes reality.

These concerns, as well as those highlighted by Justice Donohue, illuminate the problems that can taint otherwise fair trials when Rule 404 is incorrectly applied. Moreover, they underscore the requirement that prior bad acts evidence must be strictly limited and admitted only when passed through the rigorous inquiry articulated skillfully by Justice Donohue. The contested evidence in this case does not satisfy that inquiry. For that reason, and in light of my concerns set forth above, I respectfully dissent from the learned Majority's holding that the prior bad acts evidence was admissible. I join in the merits portion of Justice Donohue's dissenting opinion.

I also agree with Justice Donohue that Hicks is entitled to a new trial, albeit on slightly different grounds. Unlike Justice Donohue, I believe that the trial evidence would have sufficed to render the trial court's error harmless. The discovery of the victim's severed hands in Hicks' walls was particularly compelling. Oddly enough, the Commonwealth affirmatively has chosen to concede and forego this argument.

Throughout this case, including at oral argument before this Court, the Commonwealth has insisted that the prior bad acts evidence was essential to proving Hicks guilty of the murder. See Diss. Op. at 21-22 (setting forth each instance in which the Commonwealth asserted the essentiality of the evidence). From the outset of this appeal, the Commonwealth has elected to concede that, if this Court deemed the admission of the evidence erroneous, such error would not be harmless, inasmuch as the Commonwealth viewed the evidence as necessary to prove Hicks' guilt beyond a reasonable doubt.[1]

I confess my surprise at the Commonwealth's position, because the discovery of the victim's hands buried in Hicks' wall seems uniquely powerful evidence in and of itself. Other parts of the victim's dismembered body were found within close proximity to Hicks' residence. The police found blood on Hicks' boots and on the passenger seat of his vehicle. The victim's DNA was located on a scrub brush found in Hicks' home. Moreover, fingerprints were recovered from garbage bags that also were found in his home. The prints belonged to Hicks and the bags matched those that were used to dispose of the victim's severed body parts. If there was not a mountain of evidence,

---

[1]      In this case, the Commonwealth has never invoked the harmless error doctrine. Ordinarily, this might raise the question of whether the Commonwealth must invoke the doctrine before we may apply it. Generally, I adhere to our precedential declaration that "this Court may affirm a judgment based on harmless error even if such an argument is not raised by the parties." Commonwealth v. Allshouse, 36 A.3d 163, 182 (Pa. 2012). However, there is apparent tension between that principle and the well-settled rule that the "Commonwealth bears the burden of demonstrating harmless error." Commonwealth v. Chmiel, 889 A.2d 501, 521 (Pa. 2005). Although I believe that we can apply the doctrine without prior invocation, it seems inconsistent to assign to a party a burden of proof that is applicable only in appellate proceedings, while determining simultaneously that the party has satisfied that burden without the party raising or addressing the doctrine in any way. Nonetheless, in light of the Commonwealth's unequivocal abandonment of the harmless error claim here, any tension between these principles can (and should) be resolved in another case.

there was a formidable hill. Although this evidence appears compelling,[2] the Commonwealth captains its own ship. And it has consistently if inscrutably maintained that this evidence was not enough to convict Hicks without admission of the prior bad acts.

I would hold the Commonwealth to its litigation position, as I believe courts should accept and enforce party admissions or concessions when reasonable.[3] It is particularly important to do so in a situation such as this, because the Commonwealth investigated, charged, and prosecuted Hicks. Having prepared and undertaken the trial of this case, the Commonwealth undoubtedly has a knowledge and understanding of its many nuances far more intimate than I ever could obtain from my cold and detached review of the paper record.

Because the Commonwealth has conceded the harmless error inquiry, I would remand the case for a new trial. Because the Majority holds otherwise, I respectfully dissent.

---

[2] There was still more. For example, one forensic pathologist, Dr. Ross, opined that numerous, violent injuries were inflicted upon the victim before her death, including at least seventeen different impacts to her head and neck. Dr. Ross also determined that the victim was strangled while still alive. These injuries were particularly relevant because Hicks was the last person to be seen with the victim while she was alive.

[3] See generally Commonwealth v. Busanet, 54 A.3d 35, 59 (Pa. 2012) (rejecting ineffective assistance of counsel claim, in part, because of the appellant's concession of a relevant legal point).